UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------------- x
WILLIAM GABELMAN,                                           :
                                                            :
                              Plaintiff,                    :
                                                            :                **MEMORANDUM AND ORDER**
         -against-                                          :                11-CV-2718 (DLI) (SMG)
                                                            :
MITCHEL SHER [SIC], VANDEGRIFT                              :
FORWARDING COMPANY, INC., and                               :
EXECUTIVE RETIREMENT PLAN OF                                :
VANDEGRIFT FORWARDING CO., INC.,                            :
                                                            :
                              Defendants.                   :
-------------------------------------------------------------- x

**DORA L. IRIZARRY, U.S. District Judge:**

Plaintiff William Gabelman ("Plaintiff") commenced this action against his former employer Vandegrift Forwarding Co., Inc. ("Vandegrift") and President and CEO Mitchel Scher ("Scher," collectively "Defendants"), alleging violations of the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. § 1001 *et seq.* (2006), stemming from Defendants' denial of retirement benefits to Plaintiff after he was discharged from Vandegrift. Defendants moved to dismiss the complaint on the grounds that: (1) the retirement benefits agreement between Plaintiff and Defendants was not an ERISA covered plan; and (2) Plaintiff, therefore, has failed to allege a proper basis for federal subject matter jurisdiction. (*See* Doc. Entry No. 15, Mem. of Law of Vandegrift Forwarding Company, Inc. and Mitchel Scher in Supp. of Mot. to Dismiss ("Def. Br.") at 3.) For the reasons set forth below, Defendants' motion is granted.

## BACKGROUND

Plaintiff was employed by Vandegrift as a General Office Manager from March 19, 1990 until June 22, 2010, during which time he worked primarily at Vandegrift's offices in Queens, New York. (*See* Doc. Entry No. 1, Complaint ("Complt.") ¶ 2.) On January 1, 1997, Plaintiff

and Defendants mutually entered into a Salary Continuation Agreement ("Agreement"), which would provide Plaintiff with retirement benefits in the form of monthly post-retirement payments. (Complt. ¶ 12.) Specifically, the Agreement provided that if Plaintiff remained continuously employed with Vandegrift from January 1997 through age sixty-five, he would then retire and become entitled to salary continuation payments for ten years, payable in equal monthly installments. (Agreement ¶¶ 1–2.)[1] The Agreement, in pertinent part, provided:

(1) If Executive [Plaintiff] remains in the continuous employ of the Company [Vandegrift], he shall retire from active employment with the Company on the first day of the calendar month following the month in which he reaches age 65, unless by action of the board of Directors his period of active employment shall be shortened or extended.

(2) Upon said retirement the Company; [sic] commencing with the First day of the month following the date of such retirement shall pay Executive the sum of $40,000, a year for ten years. Payments of the sum specified shall be made in 120 equal monthly payments.

(*Id.*) Other pertinent provisions in the Agreement stipulated as follows: if Plaintiff died prior to age sixty-five, his spouse or other designee would become entitled to the 120 monthly installment payments (*Id.* ¶ 3); if Plaintiff died while receiving the salary continuation payments, Vandegrift would continue those payments to his spouse or other designee in satisfaction of the Agreement (*Id.* ¶ 4); and Vandegrift would not merge or consolidate with any organization or company that did not expressly assume the obligations set forth in the Agreement. (*Id.* ¶ 8.) Plaintiff and Vandegrift were the only parties to the Agreement, which on its face applied to no employees other than Plaintiff. (*See generally* Agreement.)

On or about June 22, 2010, Plaintiff was terminated from his position with Vandegrift and notified that he would not be eligible to receive the retirement benefits provided for in the

---

[1] The Agreement is set forth in relevant part in Plaintiff's Mem. in Opp. to Defendant's Mot. to Dismiss, at 1–2. (*See* Doc. Entry No. 16.)

Agreement. (Complt. ¶ 14, 19; Doc. Entry No. 16, Plaintiff's Mem. in Opp. to Defendant's Mot. to Dismiss ("Opp.") at 3.) Based on his termination and surrounding events, Plaintiff commenced this action against Defendants, claiming violations of ERISA under 29 U.S.C. §§ 1025(c), 1132, 1132(a)(4) and 1140. (Complt. ¶¶ 1, 22, 33, 39.) Defendants moved to dismiss the complaint pursuant to Rules 12(b)(6) and 12(b)(1) of the Federal Rules of Civil Procedure (respectively, "Rule 12(b)(6)" and "Rule (12)(b)(1)") alleging the court lacks subject matter jurisdiction because, as a matter of law, the Agreement does not constitute an ERISA covered plan. (Def. Br. at 3.)

## DISCUSSION

### I. Legal Standard

#### A. *Motion to Dismiss*

Rule 12(b)(6) of the Federal Rules of Civil Procedure states that a defendant may move, in lieu of an answer, for dismissal of a complaint for "failure to state a claim upon which relief can be granted." FED. R. CIV. P. 12(b)(6). To determine whether dismissal is appropriate, "a court must accept as true all [factual] allegations contained in a complaint" but need not accept "legal conclusions." *Ashcroft v. Iqbal*, 556 U.S. 662, 129 S. Ct. 1937, 1949 (2009). For this reason, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice" to insulate a claim against dismissal. *Id.* Moreover, "[t]o survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Id.* (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint . . . has not shown that the pleader is entitled to relief." *Id.* at 1950 (internal citations and quotation marks omitted).

3

Generally, consideration of a Rule 12(b)(6) motion to dismiss is limited to the complaint itself. *Faulkner v. Beer*, 463 F. 3d 130, 134 (2d Cir. 2006). However, "[c]onsideration of materials outside the complaint is not entirely foreclosed." *Id.* A court may consider statements and documents "incorporated in [the complaint] by reference," *Cortec Indus., Inc. v. Sum Holding L.P.*, 949 F. 2d 42, 47 (2d Cir. 1991), as well as documents "integral" to the complaint, without converting a motion to dismiss into one for summary judgment.[2] *Int'l Audiotext Network, Inc. v. Am. Tel. & Tel. Co.*, 62 F. 3d 69, 72 (2d Cir. 1995).

B. *Subject Matter Jurisdiction*

"A case is properly dismissed for lack of subject matter jurisdiction under Rule 12(b)(1) when the district court lacks the statutory or constitutional power to adjudicate it*.*" *Makarova v. United States*, 201 F. 3d 110, 113 (2d Cir. 2000). "The plaintiff bears the burden of proving subject matter jurisdiction by a preponderance of the evidence." *Aurecchione v. Schoolman Transp. Sys., Inc.*, 426 F. 3d 635, 638 (2d Cir. 2005). "In determining the existence of subject matter jurisdiction, a district court may consider evidence outside the pleadings." *Newton v. Bureau of Prisons*, 2011 WL 1636259, at *2 (E.D.N.Y. Apr. 28, 2011) (citing *Makarova*, 201 F. 3d at 113). Additionally, the court "must accept as true all material factual allegations in the complaint," but is "not to draw inferences from the complaint favorable to plaintiffs." *J.S. ex rel. N.S. v. Attica Cent. Sch.*, 386 F. 3d 107, 110 (2d Cir. 2004). However, "[u]nder the Federal Rules, if a court 'determines at any time that it lacks subject-matter jurisdiction, the court must

---

[2] Here, the Agreement between Plaintiff and Vandegrift is integral to the complaint because Plaintiff "relie[d] heavily upon its terms and effect" when drafting the complaint. *Chambers v. Time Warner, Inc.*, 282 F. 3d 147, 153 (2d Cir. 2002). Accordingly, the court considers the Agreement without converting the instant Rule 12(b)(6) motion into one for summary judgment. *See Int'l Audiotext Network, Inc.*, 62 F. 3d at 72.

dismiss the action.'" *Voss v. United States*, 360 F. App'x. 239, 240 (2d Cir. 2010) (quoting FED. R. CIV. P. 12(h)(3)).

## II. ERISA Claims

Plaintiff has stated a cognizable ERISA claim *only if* the Agreement and the retirement benefits it provides constitute a "plan" governed by ERISA. *See Fludgate v. Mgmt. Techs., Inc.*, 885 F. Supp. 645, 647 (S.D.N.Y. 1995). Pursuant to 29 U.S.C. § 1002, ERISA governs "employee benefit plan[s]," defined as an "employee welfare benefit plan," or an "employee pension benefit plan," or a plan that is both. 29 U.S.C. § 1002(3). ERISA further defines an "employee pension benefit plan" as:

> …any plan, fund, or program which was heretofore or is hereafter established or maintained by an employer or by an employee organization, or by both, to the extent that by its express terms or as a result of surrounding circumstances such plan, fund, or program--
>
> (i) provides retirement income to employees, or
>
> (ii) results in a deferral of income by employees for periods extending to the termination of covered employment or beyond

*Id.* § 1002(2)(A). Nevertheless, not every agreement by a company to provide post-retirement benefits or payments to an employee or former employee constitutes an ERISA plan. *See Fort Halifax Packing Co. Inc., v. Coyne*, 482 U.S. 1, 11–12 (1987). "The touchstone for determining the existence of an ERISA plan is whether a particular agreement creates an ongoing administrative scheme" to administer the benefits. *Eckardt v. Wiebel Tool Co., Inc.*, 965 F. Supp. 357, 363 (E.D.N.Y. 1997) (citations omitted); *see also Tischmann v. ITT/Sheraton Corp.*, 145 F. 3d 561, 565 (2d Cir. 1998); *Schonholz v. Long Island Jewish Med. Ctr.*, 87 F. 3d 72, 75 (2d Cir. 1996).

5

The Second Circuit has set forth three factors for a court to consider when determining whether an employer obligation or undertaking requires the creation of such an administrative scheme and, therefore, constitutes an ERISA plan. *See Schonholz*, 87 F. 3d at 75–76. These factors are: "(1) whether the employer's undertaking or obligation requires managerial discretion in its administration, (2) whether a reasonable employee would perceive an ongoing commitment by the employer to provide employee benefits, and (3) whether the employer was required to analyze the circumstances of each employee's termination separately in light of certain criteria." *Lamantia v. Keyspan Energy*, 2007 WL 2816188, at *5 (E.D.N.Y. Sept. 26, 2007) (citing *Schonholz*, 87 F. 3d at 72, 76); *see also Eckardt*, 965 F. Supp. at 363. A combination of all three determines whether a plan is governed by ERISA, as no single factor is determinative. *See Schonholz*, 87 F. 3d at 76.

A. *Managerial Discretion*

A plan may require managerial discretion where, for example, benefits are conditioned on the employer's determination as to whether an employee's termination was "for cause," *Tischmann*, 145 F. 3d at 567, or whether an employee is making a "reasonable and good faith effort" to obtain new, "commensurate" employment. *Schonholz*, 87 F. 3d at 74, 76. Here, the payment of benefits is not conditioned on any such discretion. Rather, it is automatically triggered by the one-time occurrence of specific events, such as Plaintiff's death or his retirement at a predetermined date, which are objectively verifiable and explicitly spelled out in the Agreement. (Agreement ¶¶ 1–3.)

Although the payments here are not in the "one-time, lump-sum" form examined in *Fort Halifax*, 482 U.S. at 12, little administrative oversight is necessary to administer them because there is nothing discretionary about the timing, form, or amount of the payments. *See Eckardt*,

965 F. Supp. at 363 (citing *Fludgate*, 885 F. Supp. at 648). Once the payments are triggered pursuant to the Agreement's terms, they are doled out mechanically each month in an amount determined by "simple arithmetical calculation," which is insufficient to show the presence of a discretionary administrative scheme. *See James v. Fleet/Norstar Fin. Grp. Inc.*, 992 F. 2d 463, 467 (2d Cir. 1993); *Eckardt*, 965 F. Supp. at 363 (no ERISA plan where benefits were "awarded based on a predetermined formula which [did] not require any exercise of discretion"). Thus, the benefits provided for in the Agreement required little more of Vandegrift than writing a check each month. The mere repetition of this act over the course of an installment-payment period is not enough to show an ongoing administrative scheme. *See James*, 992 F. 2d at 466; *Eckardt*, 965 F. Supp. at 363; *see also Tinoco v. Marine Chartering Co., Inc.*, 311 F. 3d 617, 622–23 (5th Cir. 2002) (no ERISA plan where, regardless of protracted payment period, "the total amount to be paid was based on a one-time calculation using a fixed formula"); *Gunter v. Novopharm USA, Inc.*, 2001 WL 199829, at *5 (N.D. Ill. Feb. 28, 2001) (no ERISA plan even where similar retirement benefits agreement provided for 120 monthly post-retirement payments).

Plaintiff nonetheless argues that that the Agreement requires an administrative scheme to monitor for the occurrence of events that trigger the payment of benefits, but fails to establish why such an alleged scheme would be subject to managerial discretion. For example, Plaintiff argues an administrative scheme exists because Vandegrift must monitor whether he is actively employed, is living or deceased, or has designated a beneficiary. (*See* Opp. at 11–14.) However, these are routine ministerial determinations of objective fact that are not subject to employer abuse and, therefore, neither implicate employer discretion nor require an administrative scheme. *See Hijeck v. United Techs. Corp.*, 24 F. Supp. 2d 243, 250 (D. Conn. 1998) (no administrative scheme where "employer's obligations are ministerial, and not subject to abuse of discretion");

7

*see also Fort Halifax*, 482 U.S. at 16 (ERISA not applicable where plan generates no administrative activity subject to employer abuse).

Plaintiff also argues an administrative scheme exists because a provision of the Agreement refers to the ability of Vandegrift's Board of Director's to shorten or extend his period of active employment. (*See* Agreement ¶ 1; Opp. at 10–11.) Plaintiff's argument is unavailing. Monitoring for such basic action by the Board of Directors does not require Vandegrift to create a separate, ongoing administrative scheme, and the discretion afforded to the Board of Directors relates to the ordinary operation of Vandegrift's business, not administration of the Agreement. *See Lavoie v. SBC Commc'ns, Inc.*, 2007 WL 708785, at *4 (D. Conn. Feb. 20, 2007) (employer determination of which positions were "surplus" and thus eligible for voluntary severance package was related to ordinary business discretion, not discretion in the administration of the severance package); *Hijeck*, 24 F. Supp. 2d at 250 (similar). Accordingly, administration of the Agreement did not involve the kind of "context-sensitive judgments requiring managerial discretion on a continuing, individualized basis" that are the hallmark of an ERISA plan. *Tischmann*, 145 F. 3d at 567.

   B. *Individualized Analysis of Termination*

Turning to the third *Schonholz* factor, the Agreement also did not require Vandegrift to make an individualized analysis of Plaintiff's termination (or retirement) in light of certain criteria. *See Schonholz*, 87 F. 3d at 76. On its face, the Agreement applied to no employee other than Plaintiff. (*See generally* Agreement.) Although this does not foreclose ERISA's applicability, it obviates the need for an administrative scheme where, as here, benefits eligibility is determined mechanically by objective factors. *See Belanger v. Wyman-Gordon Co.,* 71 F. 3d 451, 455 (1st Cir. 1995) (no administrative scheme where "company's offers hinged on a purely

mechanical determination of eligibility"); *see also Delaye v. Agripac, Inc.*, 39 F. 3d 235, 237–38 (9th Cir. 1994) (no administrative scheme where clerical determinations of set criteria governed single employee's benefits eligibility). Under the Agreement, Plaintiff automatically became eligible for the payment of benefits, if still actively employed in the month after he turned sixty-five, without necessity for any further criteria to be applied to determine whether benefits should be awarded. (Agreement ¶ 1); *see Eckardt*, 965 F. Supp. at 363 (no ERISA plan where only criteria governing benefits eligibility was the objective fact of retirement); *see also Gunter*, 2001 WL 199829, at *5 (no ERISA plan where employee's benefits eligibility was automatic upon retirement at a predetermined age). *But cf. Giordano v. Thompson,* 438 F. Supp. 2d 35, 42 (E.D.N.Y. 2005) (ERISA plan where employer was required to analyze employee's termination in light of "length of tenure, nature of contribution to the company, whether or not the termination was voluntary, and whether or not the termination was for cause").

Ongoing evaluation of Plaintiff's continued eligibility for the payments was similarly unnecessary, as the payments—once triggered—mechanically followed a predetermined schedule of installments in set amounts. (Agreement ¶ 2.) Accordingly, the Agreement did not require Vandegrift to make an individualized analysis of Plaintiff's termination or retirement. *See Lamantia*, 2007 WL 2816188, at *6 (no ERISA plan where employer was not required to make individualized analysis of employee's termination); *Eckardt*, 965 F. Supp. at 363 (same); *see also Schonholz*, 87 F. 3d at 76.

C. *Reasonable Employee's Perception of an Ongoing Commitment*

Plaintiff argues that, given certain provisions of the Agreement, a reasonable employee would perceive an ongoing commitment by Vandegrift to provide employee benefits. *See Schonholz*, 87 F. 3d at 76. The court agrees this factor may be present, primarily because

Vandegrift agreed potentially to assume a lasting (ten-year) financial commitment to Plaintiff or his designee, and forego merger or consolidation with any organization that did not expressly take on the employer obligations to Plaintiff set forth in the Agreement. (Agreement ¶ 2–4, 8); *see also Belanger*, 71 F. 3d at 455 (reasonable employee potentially could perceive ongoing commitment based on employer's "lasting financial commitment" to employee and "promises that had to be kept over a lengthy period").

Militating against the perception of an ongoing commitment, however, is the fact that benefits provided for in the Agreement were triggered by the one-time event of Plaintiff's retirement (or death), after which Vandegrift "had no ongoing responsibilities . . . other than sending checks and Plaintiff[] had no obligations" to Vandegrift. *Nowak v. Int'l Fund Servs. (N.A.), L.L.C.*, 2009 WL 2432715, at *2 (S.D.N.Y. Aug. 7, 2009); *see also Lamantia*, 2007 WL 2816188, at *5 (citing *Tischmann*, 145 F. 3d at 567); *In re Lyondell Chem. Co.*, 445 B.R. 296, 300, n. 21 (Bankr. S.D.N.Y. 2011) ("Typically when the only interaction between employer and employee is the distribution of checks there is no 'ongoing relationship' under ERISA"). Nevertheless, even assuming this *Schonholz* factor is present, because no one factor is determinative, and in light of the absence of the other two factors, the court finds that the Agreement is not governed by ERISA. *Schonholz*, 87 F. 3d at 76. The salary continuation plan provided for in the Agreement simply does not require the kind of "ongoing, particularized, administrative, discretionary analysis" characteristic of an ERISA plan. *James*, 992 F. 2d at 468 (quoting *Bogue v. Ampex Corp.*, 976 F. 2d 1319, 1323 (9th Cir. 1992)).

### D. ERISA's Provisions

Finally, the Agreement lacks a number of the "provisions which normally attend [the] creation and maintenance of an ERISA plan." *Laverty v. Savoy Indus., Inc.*, 954 F. Supp. 86, 90

(S.D.N.Y. 1997). For example, the Agreement's terms do not expressly provide for the appointment of a fiduciary, 29 U.S.C. § 1102(a)(1), or for a "procedure for establishing and carrying out a funding policy," *Id.* § 1102(b)(1), or for the creation of any trust fund to hold assets of the plan. *Id.* § 1103(a). The Agreement's silence in this respect buttresses the court's conclusion that the Agreement and the retirement benefits it provides are not governed by ERISA. *See Eckardt*, 965 F. Supp. at 363; *see also Laverty*, 954 F. Supp. at 89–90; *McQueen v. Salida Coca-Cola Bottling Co.*, 652 F. Supp. 1471, 1472–73 (D. Colo. 1987).

Accordingly, because the Agreement does not constitute a plan under ERISA, the court finds that Plaintiff has failed to state an ERISA claim. *See* FED. R. CIV. P. 12(b)(6). As the federal claims in the complaint were premised on ERISA's applicability to the Agreement, Plaintiff no longer asserts a claim arising under the Constitution, laws, or treaties of the United States and there is now no basis for original jurisdiction in this matter. *See Fludgate*, 885 F. Supp. at 647. Further, because no original jurisdiction exists, the court declines to exercise supplemental jurisdiction over the remaining state claim. *See* 28 U.S.C. § 1367(c)(3); *Valencia rel Franco v. Lee*, 316 F. 3d 299, 304–06 (2d Cir. 2003).

Thus, Plaintiff's complaint is dismissed for lack of subject matter jurisdiction. *See* FED. R. CIV. P. 12(h)(3); *Arbaugh v. Y&H Corp.*, 546 U.S. 500, 514 (2006) ("when a federal court concludes that it lacks subject-matter jurisdiction, the court must dismiss the complaint in its entirety").

## **CONCLUSION**

For the foregoing reasons, Defendants' motion is granted in its entirety and the action is dismissed.

SO ORDERED.

Dated: Brooklyn, New York
      March 23, 2012

_____/s/_____
DORA L. IRIZARRY
United States District Judge